U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINNE ROSE, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>     vs.<br><br>BEHR PROCESS CORP., BEHR PAINT CORP., MASCO CORP., THE HOME DEPOT, INC., and HOME DEPOT U.S.A., INC.,<br><br>                         Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Linne Rose individually and on behalf of all others similarly situated, by and through undersigned counsel, alleges as follows:

## I.  NATURE OF THIS ACTION

1.      Millions of Americans have wooden decks and concrete surfaces outside their homes.  The surfaces require periodic maintenance not only to maximize their useful life, but also to keep up their appearance. Traditionally, homeowners apply paints or stains on their decks and patios to provide a decorative and protective barrier from the elements and to minimize wear and tear.

2.      In 2013, Behr, through a national marketing campaign, released a new patio and deck product exclusively through Home Depot, branded as DeckOver. Behr and Home Depot represented to homeowners that DeckOver was worth its premium price (3-5 times more

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  expensive than ordinary paints and stains) because it was a more durable coating (5 times

2  thicker) and it could repair decks by filling in cracks and stopping splinters.

3       3.     But DeckOver is not durable or long-lasting. Instead, within mere months of

4  application, DeckOver begins to flake, peel, and separate from deck and concrete surfaces.

5  Thus, rather than providing homeowners with a premium option for reducing maintenance

6  work and improving the look and performance of their patios and decks, DeckOver performs

7  worse than cheaper options and requires hours of scraping, scrubbing, and sanding to remove it

8  (with some homeowners resorting to replacing their decks entirely).

9       4.     Plaintiff brings this class action suit on his own behalf and on behalf of others

10 similarly situated under Washington's consumer protection laws. Plaintiff seeks an order

11 forcing Behr and Home Depot to stop their deceptive conduct and to provide appropriate

12 remuneration to affected consumers.

13                          **II.  JURISDICTION AND VENUE**

14      5.     This Court has subject-matter jurisdiction over this action pursuant to the Class

15 Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy

16 exceeds $5,000,000, exclusive of interest and costs, and more than two- thirds of the members

17 of the proposed class are citizens of states different from that of Behr Process Corporation and

18 Behr Paint Corporation.

19      6.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants

20 conduct business in this District and Plaintiff resides in, applied the product in, and was

21 damaged in this District.

22                                **III.  PARTIES**

23      7.     Plaintiff Linne Rose is a resident and citizen of the State of Washington.

24 Plaintiff resides in Ravensdale, King County, Washington.

25      8.     Defendants Behr Process Corporation and Behr Paint Corporation are California

26 corporations, with their principal place of business in California. Both Behr Process

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   Corporation and Behr Paint Corporation are located at 3400 W. Segerstrom Ave., Santa Ana,

2   California, 92704.

3         9.      Defendant Masco Corporation is a Delaware corporation, with its principal place

4   of business in Michigan.  Masco is located at 20001 Van Born Road, Taylor, Michigan, 48180.

5   Masco acquired Behr Process Corporation in 1999. Masco conducts Behr-oriented marketing

6   and sales operations in Santa Ana, California. Plaintiff refer to Behr Process Corporation, Behr

7   Paint Corporation, and Masco Corporation collectively as "Behr."

8         10.     Defendant The Home Depot Inc. is a Delaware corporation, with its principal

9   place of business in Georgia. The Home Depot, Inc. is the parent company of Home Depot

10  U.S.A., Inc. and describes itself in annual reports filed with the Securities Exchange

11  Commission Home Depot, Inc. as the world's largest home improvement retailer.

12        11.     Defendant Home Depot U.S.A., Inc. is a Delaware corporation, with its

13  principal place of business in Georgia. Home Depot U.S.A. operates as a subsidiary of The

14  Home Depot, Inc. There are approximately 2,000 retail stores under the Brand name "The

15  Home Depot" in the United States, including in Covington, Washington, where Plaintiff

16  purchased DeckOver.

## IV.  COMMON FACTUAL ALLEGATIONS

**A.**    **Deck and Patio Restoration**

19        12.     Wooden decks and concrete surfaces are prone to wear and deterioration

20  through exposure to the elements, which leads to scuffing, decay, cracking, and splinters.

21  Periodic maintenance is needed to maximize the surfaces' useful life and to keep up their

22  appearance.

23        13.     One way to maintain the surfaces is through application of coatings. Coatings

24  include paints and stains that provide a thin decorative and protective barrier (with the stains

25  actually soaking into the fibers themselves). Although paints and stains provide some surface

26  protection, they typically do not improve the surfaces' condition (for example, by fixing cracks

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    or splinters). Paints also need to be reapplied relatively often to maintain their cosmetic and

2    protective benefits.

3        14.    An alternative coating, which is the focus of this case, is a relatively recent

4    introduction to the marketplace: a protective, restorative coating, known as a resurfacer.

5    Resurfacers are also painted onto surfaces and are typically marketed as providing substantially

6    more benefits (at a greater cost) than paints and stains. Resurfacers are supposed to provide an

7    attractive appearance akin to what a paint or stain would provide, but better preserve the

8    surface by coating it in a significantly thicker protective barrier. The thicker coating provides

9    the added benefit of filling in large cracks and encapsulating splinters. Resurfacers are designed

10   and expected to last significantly longer than paints and stains, eliminating the need for regular

11   maintenance while at the same time substantially extending the life of wood and concrete

12   surfaces.

13       15.    Because of their expected added benefits, resurfacers typically cost substantially

14   more than paints and stains. A consumer who spends the extra money to buy a resurfacer may

15   be able to avoid replacing a deck or will have to devote less time and money to maintaining the

16   deck in the years that follow.

17   **B.    Behr DeckOver**

18       16.    Behr manufactures a line of deck resurfacers: "Behr's Premium DeckOver."

19   Behr officially introduced its Premium DeckOver product in the spring of 2013, claiming in a

20   press release that DeckOver was an "advanced formula" that "revitalize[s] tired decks, patios,

21   porches and even pool decks, and provides a budget- friendly unique solution that was

22   previously unavailable to consumers." According to Scott Richards, Senior Vice President of

23   Marketing at Behr Process Corporation, this product line was the culmination of "years of

24   research and the latest technology."

25       17.    Richards described DeckOver's attributes as including "easy application and

26   durable protection against the elements, . . . allowing consumers to rejuvenate instead of

27

CLASS ACTION COMPLAINT - 4

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

replacing their decks or concrete surfaces." About a year later, Behr introduced a Textured DeckOver product. DeckOver is sold exclusively at Home Depot, both online and at retail locations.

**C.      Defendants' Marketing Campaign**

18.      Since DeckOver was introduced, both Behr and Home Depot have marketed it as a durable and long-lasting alternative to paint and stains, capable of extending the life of surfaces.

19.      For example, Behr's website claims DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." It also describes DeckOver as "5x thicker than standard paints and stains."

20.      Similar representations appear on the product's packaging: The label states that DeckOver "Brings new life to old wood & concrete"; "Covers up to 75 Sq. Ft. in 2 Coats"; "Creates a Smooth, Slip-Resistant Finish"; and Conceals Splinters & Cracks up to ¼"."

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

The label also represents:

- "Resists Cracking & Peeling";

- "Durable, Mildew Resistant Finish";

- "Waterproofing, Solid Color Coating";

- "Revives Wood & Composite Decks, Railings, Porches & Boat Docks";

- Great for Concrete Pool Decks, Patios & Sidewalks"; and

- "Interior/Exterior, 100% Acrylic Formula."

21.    Behr also airs television commercials advertising DeckOver. The DeckOver television commercials emphasize the same themes as can be found on DeckOver labeling and

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

in-store displays: the ads feature people standing and dancing barefoot on decks, with a voiceover saying not to "let cracks and splinters spoil your fun" and promising DeckOver is "made-to-last," "extends the life of your deck," and is the "ultimate do-over for wood and concrete."

22.    Behr hosts a blog entitled "Colorfully Behr" at www.behr.com/colorfullybehr. A blog entry dated May 31, 2013, markets DeckOver: "excellent news if you have a wood deck that looks old and weathered, or a pool deck that's cracked and ugly, because you don't have to replace it anymore." In the comments portion on this DeckOver entry, Behr describes the "life expectancy" of DeckOver as "similar to a high quality solid color wood stain (typically 5-10 years on horizontal surfaces, 15-25 years on vertical surfaces)." Behr also states on Home Depot's website that DeckOver "can be expected to last as long as a high quality Solid Color Wood Stain," which is "5-10 years on horizontal surfaces and 15-25 years on vertical surfaces."

23.    Home Depot markets DeckOver in a virtually identical manner as Behr. On its website, Home Depot emphasizes the durability and restorative effects of DeckOver, claiming it "will bring your old, weathered wood or concrete back to life," that it will "create[] a durable coating on your tired deck, rejuvenating its look," and that it will "[b]ring new life to old, uninviting wood" and make your surfaces "like new," with a "refreshed look." Home Depot, like Behr, emphasizes that DeckOver "[r]esists cracking and peeling," "conceals splinters and cracks up to ¼ in," and is 28 "waterproof[]," "providing a "mildew resistant finish." In-store displays at Home Depot tout DeckOver's "long-lasting durability."

24.    Behr and Home Depot use these representations to justify charging more for DeckOver. Behr's overall marketing scheme focuses on DeckOver's superior durability compared to paints and stains and that it is an alternative to deck replacement (which is several times more expensive). DeckOver, compared to Behr and other companies' paints and stains, covers 3-5 times less area and yet is more expensive per gallon:

CLASS ACTION COMPLAINT - 7

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

| Type | Behr Product | Coverage per gallon | Cost per gallon |
|------|-------------|--------------------|-----------------|
| Resurfacer | DeckOver | "75 sq. ft. in two coats" | $35 |
| Stain | DeckPlus Waterproofing Wood Stain | 250-300 sq. ft. first coat; 500-600 sq. ft. second coat | $27 |
| Paint | Porch & Patio Floor Paint | 400 sq. ft. | $28 |

**D.     As Defendants Know, DeckOver Is Not a Durable Alternative to Paints, Stains, and Other Resurfacers.**

25.     DeckOver is not capable of reliably coating wood and concrete surfaces for more than a short period of time. It routinely peels, bubbles, and degrades within months of application.

26.     Behr's website has received over 150 consumer complaints since summer 2013 concerning DeckOver's short-lived utility, the damage it causes to the surfaces to which it is applied, and the time and money spent to either rehabilitate or replace decks to which DeckOver was applied. Several examples of these complaints are excerpted below:

- "I was extremely happy to hear the supposed benefits and ease of use of this new product. … The problem is that upon putting our furniture back on the deck, any slight movement scratches the finish back down to the bare wood. We hosted a party this weekend for 30 people and I now have 10 or so areas to touch up. With the cost and time spent dealing with this product, I expect years of normal wear and tear, not one week. We are disappointed and would recommend going a different route."—June 29, 2013

- "Worst product ever! Waste of money! . . . I bought the Behr Deckover product in order to redo my deck.  I did all the prep work the instructions stated to do . . . I did all of this in the summer of 2013.  It is now February 2014. The product did not even last one year the product is already peeling up off of the wood . . . I would have been better to re stain the deck rather than use this product. I will have to now re-sand all of this off and apply a coat of deck stain to protect the wood."—February 27, 2014

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- Peeled Badly . . . When I applied the Deck Over product, last summer, it looked beautiful. But now that winter has ended it's peeling and looks horrible. I've only had it down for 9 months and now I'm going to have to completely redo my deck. What an absolute mess!"—April 18, 2015

- "Peeling . . . Did not last one year and very difficult to work with. You need to offer total refunds at the very least. There is no way to return the time spent working with this garbage and no way to put a price on the stress caused when the peeling began after the snow melted."—May 10, 2015

- "In less than a year of putting this Deck over on our deck, I started to see some bubbling starting along the trim boards of the deck. Not much longer and the whole deck showed signs of the bubbling and then complete peeling…. . . This was intended as a hot tub deck but now it sits empty as we cannot afford to buy any other stain/paint. Plus take the time to peel all the defective Behr Deck over paint and put another cleaner on the deck." - October 27, 2016

- "Followed all the instructions . . . Started peeling after about 60 days to a point where large chunks were blowing off. Now comes the hard part of using sandpaper, sanding discs, chemicals, power washer, scrapers and anything else I can think of to remove what's left. Behr owes me 48 hours of my life back.  Thank goodness I didn't do the railings and spindles!!!!!"—April 3, 2017

27.     Home Depot has also received hundreds of DeckOver complaints through its website:

- "Doing my deck over . . . Don't buy this product. I hope it holds up during the winter. Otherwise I'll be doing my deck over in the spring.  It definitely will not be Behr's DeckOver or anything by Behr for that matter."—August 19, 2013

- "Peeling after 6 mos . . . I followed all of the directions & replaced all rotted deck boards. Deck over is peeling & bubbling all over my deck! A disaster"—May 14, 2014

- "Worst product I have ever bought. We used over 6 gallons for our large deck. The sales person told us it would last 10 year. We followed the instructions exactly and within SIX months it was peeling! Not to mention it does not fill in cracks like promised."—June 3, 2015

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- "Within 7 months this product will peal (sic) up. I have no idea why this product is still on the market. You will be scraping it off in a year. Don't waste your time or money on it."—June 6, 2016

- "We feel the product was misrepresented by Home Depot and Behr and therefore did not meet our expectations. It did not do a good job of covering the concrete surface of our lanai."—March 5, 2017

- "I should've read the reviews before using this product. We actually paid a professional to apply it to our deck. They followed all of the instructions and it looked great for about a month and then we had a few late spring snow storms not it is peeling right off the wood. It is starting to look terrible. What a waste of money!"— May 17, 201

28.     It is common for manufacturers and sellers of consumer products to monitor media reports, internet forums, and other public reactions and treatment of their product. In May 2016, CBC News published an article entitled: "Behr Deckover subject of customer complaints over peeling paint; Company removed Facebook page with numerous complaints after CBC inquiry." The article describes, among others, homeowner Paul Rhyno, who first used DeckOver in 2014.  But "[w]ithin about three months after [Mr. Rhyno] put it on, it started peeling off in big swaths and bubbling." He tried again the following year but got the same results.

29.     Negative consumer reactions to Behr's DeckOver can also be found elsewhere across the internet. For example, about 100 customers have written complaints about DeckOver on pissedcustomer.com, including the following:

- "I applied deckover last fall and now it is all peeling off and my deck looks worse than when I first did it. I am very disappointed in this product. I spent well over a hundred dollars on this product . . . I thought it was guaranteed to last up to 10 years."—May 15, 2015

- "I had this product put on my deck last fall and it began to peel by spring. Now I have multiple places that the deck over has completely peeled off . . . It's a shame you pay hat [sic] much for a product that does not last one year."—December 30, 2016

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

30.     Behr also researched and tested DeckOver before beginning to sell it. Given how quickly it becomes apparent that DeckOver is not capable of performing as a durable alternative coating on wood and concrete surfaces, Behr certainly discovered that DeckOver begins to peel, chip, bubble, and crack within months of application before introducing DeckOver to the market.

31.     After it went on the market, complaints were widespread and persistent: Defendants have received phone calls and emails complaining about DeckOver, and consumers have been uploading negative reviews of DeckOver on Behr's own website, Home Depot's own website, and elsewhere since summer 2013. Behr reviews the complaints on these websites and has responded to some of them. The complaints on these websites are not prominent.  For example, Behr highlights on its DeckOver product page the "Latest Featured Reviews" which consists of four and five star reviews, but only through scrolling well down the page or clicking to a separate webpage is it revealed that there are hundreds of negative reviews. Likewise, the reviews on Defendants' websites do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews. In addition, there is at least one report by the media that Behr removed online complaints on its own Facebook page containing DeckOver complaints.

32.     Fixing the damage to one's deck that results from applying DeckOver is difficult and costly.  As the reviews above describe, DeckOver cracks, peels, bubbles, and chips, exposing the underlying surface to the elements. All these forms of exposure both fail to protect wood from precipitation and trap water onto wooden boards underneath the DeckOver that remains, causing mildew and rot. Repairing loose areas in patches does not solve these problems as other areas of DeckOver will inevitably loosen. Full removal of DeckOver requires stripping the deck and reapplying a protective coating, which takes hours. Given how costly it is to remove DeckOver, re-prepare the surface, and re-coat it, some deck owners resort to replacing their decks entirely.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

33.     Yet Defendants continue to sell DeckOver, continue to market it as "durable," "long-lasting," and an alternative to replacing one's deck, and do not warn customers beforehand that the product fails after only a few months, often leaving the surface looking worse than before DeckOver was applied.

34.     As a result, consumers continue to spend hundreds of dollars purchasing and applying DeckOver, and spend time and money removing and replacing DeckOver when it peels, bubbles, chips, cracks, discolors, and damages their decks.

**E.     PLAINTIFF ROSE'S EXPERIENCE**

35.     Plaintiff Linne Rose purchased five 5-gallon containers of Behr DeckOver in March 2015, from a Home Depot store in Covington, Washington. Before his purchase, Mr. Rose had seen television advertisements for DeckOver. Mr. Rose also reviewed the product label before buying DeckOver. Mr. Rose was told by a Home Depot employee before his purchase that DeckOver would last ten to fifteen years.

36.     Plaintiff applied the DeckOver to the wood deck on his home, in August 2014. He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed. Within a year, the DeckOver began to peel, bubble, and flake. Additionally, Plaintiff observed the DeckOver cause cracks in the wood deck that allowed rot to develop.

37.     In 2016, Mr. Rose called Behr and told them about the problems DeckOver was causing his deck.  Behr offered to send him more DeckOver and sandpaper. Mr. Rose rejected this offer as a wholly inadequate remedy. Then, Behr offered him $500, which was likewise rejected as wholly inadequate.

38.     The DeckOver on Mr. Rose's deck has continued to peel off in large strips, bubble, flake, cause cracks, and develop wood rot.

39.     Had Mr. Rose known that DeckOver was incapable of providing a durable surface coating, he would not have purchased or used the product.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

40.     Mr. Rose continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings. He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## V.  CLASS ACTION ALLEGATIONS

41.     This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

42.     Plaintiff seeks to represent the following classes:

> Nationwide Class:   All persons who purchased a Behr Premium DeckOver product in the United States.

> Washington Class: All persons who purchased a Behr Premium DeckOver product in the state of Washington.

43.     Excluded from both classes are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased DeckOver for resale.

44.     Plaintiff and class members seek relief under Rule 23(b)(2). The injunctive relief Plaintiff and class members seek is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation. Plaintiff and class members also seek relief under Rule (b)(3) and/or (c)(4).

45.     **Numerosity:** Behr has manufactured, and Home Depot has sold, DeckOver to at least thousands of proposed class members. Members of the proposed classes are thus too numerous to practically join in a single action. Class members may be notified of the pendency

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  of this action by mail, supplemented by published notice (if deemed necessary or appropriate

2  by the Court).

3      46.    **Commonality and Predominance**: Common question of law and fact exist as

4  to all proposed class members and predominate over questions affecting only individual class

5  members. These common questions include whether:

6      a.    Defendants marketed DeckOver as a durable resurfacer capable of

7          providing long-lasting protection for wood and concrete surfaces;

8      b.    DeckOver is not a durable resurfacer and is not capable of providing

9          long-lasting protection for wood and concrete surfaces, but is instead

10         prone to promptly peeling, chipping, bubbling, and degrading within

11         months of application;

12     c.    Defendants' marketing of DeckOver was false, deceptive, and

13         misleading to reasonable consumers;

14     d.    Defendants knew DeckOver was not a durable resurfacer capable of

15         providing long-lasting protection for wood and concrete surfaces and is

16         instead susceptible to peeling, chipping, bubbling, and degrading within

17         months of application;

18     e.    DeckOver's propensity to peel, chip, bubble, and generally degrade

19         within months of application, rather than provide long-lasting protection

20         for wood and concrete surfaces, would be important to a reasonable

21         consumer;

22     f.    Defendants failed to disclose DeckOver's propensity for peeling,

23         chipping, bubbling, and degrading within months of application; and

24     g.    Defendants' conduct violates various state consumer protection statutes.

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

47.    **Typicality:** Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased DeckOver, giving rise to substantially the same claims.

48.    **Adequacy:** Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

49.    **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

50.    In the alternative, the proposed classes may be certified because:

    a.    The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

    b.    The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

CLASS ACTION COMPLAINT - 15

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

c.      Defendants have acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## VI.  TOLLING OF STATUTES OF LIMITATIONS

51.     Discovery Rule: Plaintiff's and class members' claims accrued upon discovery that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application. While Defendants knew, and concealed, these facts, Plaintiff and class members could not and did not discover these facts through reasonable diligent investigation until after they experienced the aftermath of DeckOver application and learned that the problem was not isolated to their DeckOver.

52.     Active Concealment Tolling: Any statutes of limitations are tolled by Defendants' knowing and active concealment of the facts set forth above. Defendants kept Plaintiff and all class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery. Plaintiff could not have reasonably discovered these facts, nor that Defendants failed to disclose material facts concerning its performance.

53.     Estoppel: Defendants were and are under a continuous duty to disclose to Plaintiff and all class members the true character, quality, and nature of DeckOver. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of DeckOver. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery. Plaintiff

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

reasonably relied on Defendants' active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

54.     Equitable Tolling: Defendants took active steps to conceal and misrepresent material facts relating to DeckOver's performance. The details of Defendants' efforts are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery. When Plaintiff learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## VII.  CAUSES OF ACTION

### Count I
### Breach of Implied Warranty
### (On Behalf of the Nationwide Class or Alternatively on Behalf of the Washington Class Against All Defendants)

55.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

56.     Defendants are in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling DeckOver. Defendants impliedly warranted to Plaintiff and class members that DeckOver was of a certain quality, was fit for the ordinary purpose for which DeckOver would be used, and conformed to the promises or affirmations of fact made on the container or label.

57.     Defendants are in privity with Plaintiff and class members by law and fact. First, Plaintiff has had sufficient direct dealings with Defendants and/or their representatives and agents to establish privity of contract. Second, Plaintiff and class members are intended third-party beneficiaries of contracts, including between the Behr Defendants and the Home Depot Defendants. Third, Defendants' advertisements were aimed at Plaintiff and class members. Defendants are estopped from limiting claims by class members for common law and statutory violations based on a defense of lack of privity.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

58.     DeckOver would not pass without objection in the market for resurfacers because it is prone to premature peeling, cracking, and bubbling, which also makes it unfit for the ordinary purpose for which DeckOver would be used.

59.     DeckOver is not adequately labeled because its labeling fails to disclose its propensity to premature peeling, cracking, bubbling, and degradation, and does not advise members of the proposed class of the existence of the issue prior to experiencing failure firsthand.

60.     Defendants' conduct described in this complaint constitutes a breach of implied warranty under U.C.C. § 2-314. At all times, the 49 states included in the Implied Warranty Class and the District of Columbia have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability.

61.     Defendants' actions have deprived Plaintiff and the members of the proposed class of the benefit of their bargains and have caused DeckOver to be worth less than what Plaintiff and other members of the proposed class paid.

62.     As a direct and proximate result of Defendants' breach of implied warranty, members of the proposed class received goods whose condition substantially impairs their value. Plaintiff and members of the proposed class have been damaged by the diminished value of their DeckOver.

63.     Plaintiff and members of the proposed class are entitled to damages, as well as reasonable attorneys' fees and costs.

**<u>Count II</u>**

**Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.**
**(On Behalf of the Nationwide Class or Alternative on Behalf of the Washington Class**
**Against All Defendants)**

64.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

65.     Plaintiff and the other members of the classes are "consumers" within the meaning of 15 U.S.C. § 2301(3).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

66. Defendants are "suppliers" and "warrantors" within the meanings of 15 U.S.C. § 2301(4)-(5).

67. DeckOver products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

68. There exists an implied warranty for sale of DeckOver within the meaning of the Act.

69. For the reasons detailed above, Defendants breached this implied warranty, as DeckOver was not fit for its intended use.

70. Defendants' breach of warranty has deprived Plaintiff and class members of the benefit of their bargain.

71. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

72. Defendants have been afforded reasonable opportunity to cure its breach of warranty. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff has notified Defendants' and provided them with reasonable opportunity to correct their business practices and cure their breach of warranties. Defendants have not cured the breach of warranty.

73. In addition, resorting to any informal dispute settlement procedure or affording Defendants another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Defendants continue not to disclose DeckOver's propensity to rapidly peel, crack, bubble, and degrade, or to provide repairs at no cost. Any requirement under the Act or otherwise that Plaintiffs resort to any informal dispute settlement procedure or afford Defendants a reasonable opportunity to cure the breach of warranty described above is excused or, alternatively, has been satisfied.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

74.     As a direct and proximate cause of Defendants' warranty breach, Plaintiffs and all class members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and the other members of the class, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

### Count III
### Violation of The Washington Consumer Protection Act
### Rev. Wash. Code Ann. § 19.86.010, et seq.
### (On Behalf of the Washington Class Against the Behr and Home Depot Defendants)

75.     Plaintiff and the Proposed Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

76.     The stated purpose of the Washington Consumer Protection Act ("CPA") is "to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920

77.     RCW 19.86.020 declares unlawful "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce …"

78.     Plaintiff and all Class Members of the Washington Subclass are "persons" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by RCW 19.86.010.

79.     Defendants violated the CPA by engaging in the unfair and deceptive actions and/or omissions as described herein by engaging in unfair or deceptive acts or practices that occurred in trade or commerce, had an impact on public interest, and caused injury to property and/or business.

80.     In violation of the CPA, Defendants employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in its sale and advertisement of DeckOver in the State of Washington.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

81.     Defendants engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiff, Class, and/or the general public would rely upon the concealment, suppression, omission of such material facts and purchase DeckOver from Defendants.

82.     The concealment, suppression, or omission of the aforementioned material facts had the capacity to and did so deceive a substantial portion of the public, including Plaintiff and the members of the Class, into believing DeckOver was durable and long-lasting.

83.     Plaintiff and Class Members would not have purchased DeckOver had they known or become informed of DeckOver would peel, bubble, flake, crack, or rot.

84.     Defendants' concealment, suppression, or omission of material facts as alleged herein constitutes unfair, deceptive and fraudulent business practices within the meaning of the CPA.

85.     Defendants have acted unfairly and deceptively by misrepresenting the quality, longevity, and reliability of DeckOver.

86.     Defendants either knew, or should have known, that DeckOver was defectively designed and/or manufactured, would fail prematurely.

87.     Defendants knew at the time DeckOver left its control, the product contained the defects described herein. At the time of sale, the DeckOver contained defects. The defects reduced the effectiveness and durability of the DeckOver and render it unable to perform the ordinary purposes for which it is used, as well as cause the resulting damage described herein.

88.     As a direct and proximate cause of the violation of CPA described above, Plaintiff and Class Members have been injured in that they purchased DeckOver based on nondisclosure of material facts alleged above. Had Plaintiff and Class Members known about the defects, they would not have purchased it.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

89.     Defendants used unfair methods of competition and unfair or deceptive acts or practices in conducting its business. This unlawful conduct is continuing, with no indication that Defendants will cease.

90.     Defendants' actions in connection with the distributing, marketing, warranting, and sale of the DeckOver as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the CPA.

91.     Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

92.     Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to RCW 19.86.020.

93.     As a direct and proximate result of Defendants' violations of the CPA, Plaintiff has suffered damages. Plaintiff is entitled to actual damages, including, but not limited to, the difference in value between the DeckOver as it was originally delivered and as it should have been delivered, equitable and declaratory relief, punitive damages, treble damages, costs and reasonable attorney's fees.

### Count IV
#### Unjust Enrichment
#### Based on Washington Common Law
#### (On Behalf of the Nationwide Class Against the Behr Defendants)

94.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

95.     As described above, the Behr Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

96.     As a result of its fraudulent acts and omissions related to DeckOver, Behr obtained monies which rightfully belong to Plaintiff and the proposed Nationwide 28 Class members to the detriment of Plaintiff and the proposed Nationwide Class members.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

97.     Behr appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Nationwide Class members, who, without knowledge that the DeckOver would not perform as advertised, paid a higher price for the product than it was worth. Behr also received monies for DeckOver that Plaintiff and the proposed Nationwide Class members would not have otherwise purchased.

98.     It would be inequitable and unjust for Behr to retain these wrongfully obtained profits.

99.     Behr's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

100.    Plaintiff and the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

A.      An order certifying the proposed classes and appointing Plaintiff's counsel to represent the classes;

B.      An order awarding Plaintiff and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law;

C.      An order awarding Plaintiff and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

D.      An order enjoining Defendants from their unlawful conduct;

E.      An order awarding Plaintiff and the classes pre-judgment and post- judgment interest as allowed under the law;

F.      An order awarding Plaintiff and the classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    G.    An order awarding such other and further relief as this Court may deem just and

2    proper.

3                              **IX.  JURY DEMAND**

4    Plaintiff demands a jury trial on all issues so triable.

5    RESPECTFULLY SUBMITTED AND DATED this 20th day of November, 2017.

6                              TERRELL MARSHALL LAW GROUP PLLC

7
                             By:    /s/ Beth E. Terrell, WSBA #26759
8                                   Beth E. Terrell, WSBA #26759
                                    Email: bterrell@terrellmarshall.com
9                                   Eric R. Nusser, WSBA #51513
                                    Email: enusser@terrellmarshall.com
10                                  936 North 34th Street, Suite 300
                                    Seattle, Washington 98103-8869
11                                  Telephone: (206) 816-6603
                                    Facsimile: (206) 319-5450
12

13                                  Daniel K. Byrson, *Pro Hac Vice Forthcoming*
                                    Email:  dan@wbmllp.com
14                                  Scott C. Harris, *Pro Hac Vice Forthcoming*
                                    Email: scott@wbmllp.com
15                                  Patrick M. Wallace, *Pro Hac Vice Forthcoming*
                                    Email: pat@wbmllp.com
16                                  WHITFIELD BRYSON & MASON, LLP
                                    900 West Morgan Street
17                                  Raleigh, North Carolina 27603
                                    Telephone: (919) 600-5000
18                                  Facsimile: (919) 600-5002
19

20                                  *Attorneys for Plaintiff*

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT - 24